FILED



2007 Aug-16  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| FRANK ENGLAND, *individually,* ] <br> *and on behalf of all other* ] <br> *Alabama residents* ] <br> *similarly situated,* ] <br> ] <br>     Plaintiff, ] <br> ] <br>     vs. ] <br> ] <br> THE HOME DEPOT, U.S.A. INC., ] <br> WAL-MART STORES, INC., ] <br> LOWE'S HOME CENTERS, INC., ] <br> TRACTOR SUPPLY COMPANY, INC., ] <br> CURRY ACE HARDWARE, *and* ] <br> *Defendants A, B, C, and D are* ] <br> *those corporations or other* ] <br> *entities collecting sales tax in* ] <br> *excess of Alabama Department* ] <br> *of Revenue Rules and Regulations* ] <br> *and the Code of Alabama (1975)* ] <br> *§§ 40-23-2(3), 40-23-61(b),* ] <br> ] <br>     Defendants. ] | 6:06-CV-04928-LSC |

## MEMORANDUM OF OPINION

The Court has for consideration Plaintiff Frank England's ("England")

Motion to Remand to the Circuit Court of Walker County, Alabama, filed on

January 8, 2007 (Doc. 19), and the Joint Stipulation of Dismissal, filed by

England and Defendant Curry Ace Hardware ("Ace") on July 17, 2007 (Doc.

42).

I.     Introduction and Procedural History.

England, on behalf of himself and all other similarly situated Alabama

residents, filed suit against Defendants The Home Depot, U.S.A, Inc., Wal-

Mart Stores, Inc., Lowe's Home Centers, Inc., Tractor Supply Company, Inc.,

Curry Ace Hardware, and four fictitious defendants[1] (hereinafter collectively

referred to as "Defendants") in the Circuit Court of Walker County,

Alabama, on November 22, 2006.  (Doc. 1 Ex. A.)  England's complaint

alleges that Defendants "have charged, and continue to charge, an

---

[1] Although the Federal Rules of Civil Procedure, unlike the Alabama rules, do not allow suit against fictitious defendants, the presence of fictitious defendants in a case otherwise removable will not prevent the case from being removed.  *See Wilson v. General Motors Corp.*, 888 F.2d 779, 782 n.3 (11th Cir. 1989) (noting that the presence of fictitious defendants in a case otherwise removable was an issue that had been "made academic by Section 1016(a) of the Judicial Improvements and Access to Justice Act which amended 28 U.S.C. § 1441(a) by adding the sentence: 'For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded'").

excessive amount of sales tax on electric generators in an amount that is contrary to Alabama state law,"[2] and seeks declaratory and injunctive relief, as well as restitution of the amount of sales tax collected by Defendants but not yet remitted to the Alabama Department of Revenue.  (*Id.* at ¶¶ 8, 28, 34; Doc. 19 ¶ 5.)

Defendant The Home Depot U.S.A, Inc. ("Home Depot") removed the case to this Court on December 22, 2006, invoking federal jurisdiction through the Class Action Fairness Act of 2005 ("CAFA").[3]  (Doc. 1.)  Home Depot contends that CAFA confers jurisdiction on this Court because minimal diversity of citizenship is present[4] (England is a citizen of Alabama and Home Depot is a citizen of Delaware and Georgia), there are over 100 potential members of England's class, and because the amount in controversy,

---

[2] Specifically, Alabama Department of Revenue Rules and Regulations § 810-6-2.4.01 and Ala. Code 1975 §§ 40-23-2(2) and 40-23-61(B).

[3] Pursuant to 28 U.S.C. § 1453(b), a class action "may be removed by any defendant without the consent of all defendants."

[4] Unlike traditional diversity jurisdiction, diversity of citizenship under CAFA may be conferred by minimal diversity of citizenship. *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006).  *Compare Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806) (Marshall, C.J.) (recognizing the traditional rule of complete diversity, as set forth in the Judiciary Act of 1789 despite the fact that Article III of the Constitution would have allowed Congress to vest the federal courts with jurisdiction over cases where only minimal diversity was present).

exclusive of interest and costs, exceeds $5,000,000.[5]  *See* 28 U.S.C. §§ 1332(d)(2)(A) and (d)(6).  England moved to remand on January 8, 2007, arguing that this Court could not assume jurisdiction over this cause pursuant to CAFA because Home Depot did not establish that the requisite amount in controversy had been met.  (Doc. 19 ¶ 6.)

On July 17, 2007, England and Ace filed a Joint Stipulation of Dismissal, which memorialized their agreement for Ace to be dismissed from this action[6] and England's "consent" that this Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332(a), the traditional, non-CAFA diversity jurisdiction statute.

II.    Standard for Remand.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian*

---

[5] As further discussed *infra,* Home Depot did not present evidence as to the value of the injunction to its co-defendants or as to the amount of tax overages allegedly collected by its co-defendants.  Home Depot only presented evidence — insufficient evidence, in the Court's view — as to its own alleged overages, and of the value of the injunction to it alone.

[6] Although the other defendants were not consulted on and did not join in the Joint Stipulation of Dismissal, they indicated in a Response that they do not object to Ace's dismissal from this cause.  (Doc. 43.)

*Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). For removal to be proper, the Court must have subject-matter jurisdiction in the case. "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In addition, the removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998).

In 2005, Congress enacted CAFA to "address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel." *Lowery v. Alabama Power Co.,* 483 F.3d 1184, 1193 (11th Cir. 2007). "CAFA amends the federal diversity jurisdiction statute, 28 U.S.C. § 1332, by inserting a new subsection, § 1332(d). This new subsection works a sea change in diversity jurisdictions for certain class actions. It broadens diversity jurisdiction by establishing lower threshold requirements for jurisdiction and abrogating long-established precedent." *Id.* Specifically, CAFA vests federal district courts with jurisdiction over class actions where there are over 100 members of the plaintiff class; where

there exists minimal diversity between any plaintiff and any defendant; and where the aggregate value of the plaintiff class's claims exceeds $5,000,000, exclusive of interest and costs.  Despite its underlying expansion of federal jurisdiction, however, CAFA is not an across-the-board reworking of the mechanics of removal jurisprudence.[7]  The traditional rule that the removing party bears the burden of establishing federal jurisdiction is not changed by CAFA.  *See Miedma v. Maytag Corp.*, 450 F.3d 1322, 1328-29 (11th Cir. 2006); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006); *and McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).  Therefore, in the instant case, Home Depot bears the burden of establishing subject-matter jurisdiction.  *See Wilson v. Republic Iron & Steel*

---

[7] As the Eleventh Circuit has recently noted,

> While the text of CAFA plainly expands federal jurisdiction over class actions and facilitates their removal, "[w]e presume that Congress legislates against the backdrop of established principles of state and federal common law, and that when it wishes to deviate from deeply rooted principles, it will say so." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 900 (11th Cir. 2003); *see White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1434-35 (11th Cir. 1997) ("Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation.")

*Miedma v. Maytag Corp.*, 450 F.3d 1322, 1329 (11th Cir. 2006).

*Co.*, 257 U.S. 92, 97 (1921) (stating that the defendant bears the burden of proving subject-matter jurisdiction in removed actions).  *But see Williams v. Best Buy Co., Inc.*, 369 F.3d 1316, 1320 (11th Cir. 2001) (noting that when a plaintiff does not plead a specific amount of damages, the removing defendant may satisfy the amount in controversy requirement by a preponderance of the evidence), *and Lowery*, 483 F.3d at 1208-1209 (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *overruled on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2003) (same)).

III.   Discussion.

   A.    England's Motion to Remand.

   In *Lowery*, the United States Court of Appeals for the Eleventh Circuit held:

> the removal-remand scheme set forth in 28 U.S.C. §§ 1446(b) and 1447© requires that a [district] court review the propriety of a removal on the basis of the removing documents.  If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.  If not, the court must remand.

483 F.3d at 1211 .  The Court went on to observe that, under this calculus, "jurisdiction is either evident from the removing documents or remand is appropriate."  *Id*.  Because jurisdiction is not "evident from the removing documents," and the removing party has not successfully established jurisdiction despite multiple opportunities to do so, "remand is appropriate," obliging the Court to grant England's motion.

All parties concede that minimal diversity is present,[8] and diverge on the issue of whether the $5,000,000 amount in controversy requirement is met.  Home Depot argues that the amount in controversy is satisfied because the cumulative value of attorneys' fees[9] and of the injunction sought by England, *Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1047

---

[8] Another CAFA requirement, the presence of a 100-member class of potential plaintiffs, is also not disputed by the parties.

[9] The Court notes that *In re Intel Corp. Microprocessor Antitrust Litigation*, 436 F. Supp. 2d 687, 690 (D. Del. 2006), cited by Home Depot for the proposition that attorneys' fees in cases removed under CAFA can be aggregated and included in the amount in controversy calculus, is both not precedent and inapposite to the instant case. The plaintiff in that case sought full compensation and treble damages, as compared to England, who seeks neither.  Further, the single mention of attorneys' fees in the Delaware court's opinion does not support Home Depot's implicit contention that it was a major factor in determining that the CAFA amount in controversy was met.  Regardless, the Court is not persuaded by Home Depot's "statistics" valuing the fee award at over $1,700,000, or by its attempt to value the attorneys' fees by citing (and filing with the Court) England's settlement demand letter.  (Doc. 26 at 10; Doc. 38 Ex. 1.)

(11th Cir. 1993), as well as the amount of tax overages allegedly collected by Defendants, exceed $5,000,000.[10]  Both arguments fail because Home Depot failed to meet its burden of demonstrating the amount in controversy despite repeated opportunities to do so.

In cases where a plaintiff seeks declaratory or injunctive relief, "it is well established that the amount in controversy is measured by the value of the object of the litigation."[11]  *Edge v. Blockbuster Video, Inc.*, 10 F. Supp. 2d 1248, 1251 (N.D. Ala. 1997) (Blackburn, J.) (citing *Hunt v. Washington St. Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977), *and Bullard*, 995 F.2d at 1047).  In *Edge*, which Home Depot submits is "particularly instructive," plaintiffs sought an injunction against defendant's practice of collecting

---

[10] The Court notes, but does not reach, England's argument that the amount of alleged tax overages collected is irrelevant because England's Complaint does not seek to recover the sum total of tax overages allegedly collected by Defendants and that, moreover, England cannot attempt to do so without exhausting his exhaustive remedies with the Alabama Department of Revenue.  As of this writing, he has not done so.  (Doc. 19 ¶¶ 6-8.)  England submits that the objective of this cause is a declaration that Defendants have violated Alabama tax laws and an injunction to prevent them from continuing the practice, and ***not*** "a refund of sales tax remitted by the Defendants to the Alabama Department of Revenue."  (Doc. 39 at 3.)

[11] Home Depot submits that the value of the injunction is $7,400,000 for every two years that it is in place.  (Doc. 38 at 6.)  As discussed *infra*, the Court is not persuaded by this figure or the questionable [at best] means by which Home Depot calculated it.

purportedly excessive video rental late return fees.  (Doc. 38 at 4.)  Home Depot's reliance on *Edge* is misplaced;[12] unlike in the instant case, the *Edge* plaintiffs' complaint stated the precise amount of late fees being charged by defendant — late fees that were uniformly charged on video rentals that were uniformly priced.  10 F. Supp. 2d at 1249-50.  There is uniformity in neither the pricing of the generators sold by Home Depot and its co-defendants nor the corresponding sales tax charged.[13]

––––––––––––––––––

[12] Far more instructive on this point is the Second Circuit's opinion in *DiTolla v. Doral Dental IPA of New York, LLC*, 469 F.3d 271 (2nd Cir. 2006).  In that case, plaintiff sought an accounting of defendant's financial dealings with a Medicare- and Medicaid-funded reimbursement pool.  Over the operative time period, approximately $40,000,000 went into and out of the reimbursement pool, and defendant claimed that the CAFA amount in controversy requirement was therefore satisfied.  The Court disagreed, holding this amount was not "'in controversy' in the present litigation," as plaintiff's complaint sought "only an accounting, the results of which are presently unknown.  For that reason, no one can say how much money may be ultimately claimed" by plaintiff. *Id.* at 276-77.

The Court acknowledges that England, unlike the *DiTolla* plaintiff, does not claim zero damages or restitution.  He does seek restitution for monies not already remitted to the Alabama Department of Revenue.  However, the Court finds the situation in *DiTolla* to be far more analogous to the instant case than the situation in *Edge*.

[13] The Court notes that the value of the injunction would be relatively small as to all defendants, save for Home Depot.  All counsel acknowledged, during the May 17, 2007, status conference, that Home Depot was the only defendant still charging taxes on generators.  While there probably is some value to an injunction that requires the non-Home Depot defendants to continue to follow Alabama law, it has not been demonstrated to be of such an amount that when combined with the other relief sought by England it satisfies the amount in controversy requirement.

Rather, Home Depot relied on a defective calculation of the amount in controversy. It seized upon England's statement that his own experience of being allegedly overcharged sales tax in the amount of $354.66 in his purchase of a generator was "typical" of the experiences of the putative class. Estimating that it had sold approximately 21,000 generators over the 2-year period preceding the filing of England's complaint,[14] Home Depot extrapolated a value of $7,400,000 (21,000 x 354.66). (Doc. 26 at 9.) Under this questionable (at best) algorithm, Home Depot concludes that the amount of alleged overages in this 2-year period alone eclipses the $5,000,000 CAFA threshold by some $2,400,000 even before the value — which it does not attempt to establish — of the tax overages purportedly levied on Alabama consumers by Home Depot and its co-defendants over the entire 8-year period, 1998-2006, that England alleges the practice was in place.

Although the Court acknowledges that Defendants may rely on the Complaint to establish the amount in controversy, *Allen v. R&H Oil & Gas*

---

[14] Home Depot represented to the Court that it "generally does not retain sales records beyond two years." (Doc. 1 at 5 n.2.)

*Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995), Plaintiffs' contention, in his complaint, that he is representative of the class is not tantamount to contending that each of the class members purchased a generator that was as expensive as the one purchased by the named plaintiff.   England purchased a generator that cost over $6,000 from a merchant that sells generators costing as little as $400.[15]  (Doc. 30 at 4.)  The Complaint was obviously averring that the named plaintiff was representative of the putative class members *in the way* he was taxed for the generator he purchased, *not as to the precise amount* of allegedly excessive sales tax charged.  Although Home Depot did submit affidavit evidence that it sold 21,000 generators in 2004-06, it refused to reveal the sales price(s) of the generators or tax amount on the sales price(s) despite repeated opportunities.  It is bizarre and beyond belief that Home Depot would ask this Court to determine that the value of each of those sales was the $6,000 price England paid, thereby assuming that Home Depot sold 21,000 generators priced at $6,000 and none of its less expensive generators that

---

[15] Evidence filed by England suggests that Home Depot carries generators priced below $6,000 (30 types), below $1,000 (15 types), and above $6,000 (9 types).  (Doc. 30 at 4.)

it admitted in the conferences with the Court that Home Depot carries and sells.[16]

The Court allowed Defendants numerous opportunities to present evidence to establish that the amount in controversy met the CAFA threshold.  Following briefing on the remand issue pursuant to this Court's order of January 9, 2007 (Doc. 21), the Court, during a March 27, 2007, scheduling conference, questioned the parties on whether the $5,000,000 amount in controversy requirement had been satisfied in this cause.  To assist it in a valuation of England's claims for relief, the Court directed the parties to answer specific questions related to the amount in controversy.[17]

---

[16] Apparently  the value of the sales tax levied on the generators is not anywhere close to being sufficient to support the jurisdiction of the Court since Defendants refused to disclose it despite multiple opportunities to do so.  Defendants, upon remand to state court, will ultimately have to answer those questions.  Refusing to do so at this point indicates to the Court that if the amounts had been disclosed, they would have been found to be insufficient.

[17] Home Depot filed a "response" to the following questions on April 27, 2007:

> (1) What is the value of the declaratory/injunctive relief Plaintiff seeks in this case for purposes of determining the amount in controversy?
>
> (2) How much in alleged tax over-charges in connection with Home Depot's sale of electric generators has Home Depot collected, but not remitted to the Alabama Department of Revenue (the "Department")?

Home Depot's response was insufficient to meet its burden to establish that the value of the claims exceeded the $5,000,000 CAFA threshold, and the Court raised the topic again during a second status conference on May 16, 2007.  At that time, Home Depot again failed to submit evidence the Court requested as necessary for valuation of England's claims for CAFA purposes. After a brief meeting with each other, defense counsel jointly informed the Court that they wished to consult with their clients before determining whether or not they would reveal the information that the Court required to make a valuation of England's claims.   The Court, guided by considerations of fundamental fairness, scheduled an Evidentiary Hearing for May 30, 2007, to assess any affidavits, witnesses, or other evidence regarding the valuation of England's claims that Defendants chose to present.  However, on May 24, 2007, Defendants filed a Notice with this Court, stating that they did not wish to proceed with the Evidentiary Hearing and would instead "rest on the papers previously submitted in opposition to Plaintiff's remand motion," essentially continuing to insist that the Court

---

(Doc. 38.)

accept the $7,400,000 figure based on Home Depot's questionable math.

(Doc. 41 ¶ 5.)

Defendants were either unwilling or unable to produce either the

actual amounts of taxes collected or the sales price of generators sold over

the time period in question so as to allow the Court to appropriately

determine the value of the injunction that was requested by the Plaintiff.[18]

Where the evidence is

> insufficient to establish that removal was proper or
> that jurisdiction was present, neither the defendant
> nor the court may speculate in an attempt to make
> up for the notice's failings.  The absence of factual
> allegations pertinent to the existence of jurisdiction
> is ***dispositive*** and, in such absence, the existence of
> jurisdiction should not be divined by looking to the
> stars.

*Lowery*, 484 F.3d at 1215 (internal citations omitted)(emphasis added); *see*

*also DiTolla,* 469 F.3d at 276 (affirming district court's remand of case,

---

[18] The Court also notes that the 2-year time period upon which Home Depot would base the valuation of the injunction, was one where the State of Alabama experienced multiple hurricanes, and most likely one where merchants such as Defendants sold more generators than in a time of serene meteorological conditions.  Although Home Depot argued that the future value of the injunction was sufficient, whether as a whole or in part, to satisfy the amount in controversy, the Court finds that the future value of the injunction is indeterminable because it is dependent in part upon the unknown and sporadic weather patterns of the Southeastern United States.

removed pursuant to CAFA, where  complaint did not request damages or

full restitution but instead sought equitable relief).

The Court acknowledges that valuation in this case is quite difficult.

"As the remedy sought is equitable, and not legal, a monetary value cannot

be easily assigned." *Id*.  The following language from *Lowery* is instructive:

> We have no evidence before us by which to make
> any informed assessment of the amount in
> controversy. [...] As such, any attempt to engage in
> a preponderance of the evidence assessment at this
> juncture would necessarily amount to unabashed
> guesswork, and such speculation is frowned upon.
> *See Lindsey v. Ala. Tel. Co.*, 576 F.2d 593, 595 (5th
> Cir.1978) (noting, in a removed class action, that "it
> was not open for defendants to attempt to show"
> the requisite amount in controversy per capita where
> the complaint made insufficient allegations, "[n]or
> was it open to the district court to speculate" on
> whether the jurisdictional facts existed).

483 F.3d at 1210-11.   All parties, including England, concede that

Defendants cannot be sued for tax overages already remitted to the State

Department of Revenue.  Therefore, the amount in controversy requirement

would have to be satisfied by a combination of the amount still in

Defendants' possession — that is, the amount not already turned over to the

Department of Revenue — and the future value of the injunction.  There is insufficient evidence before the Court by which to make an informed assessment of the amount in controversy. At this point, the Court would be making a guess as to the amount in controversy.  Defendants' utter failure to satisfy their burden leaves the Court no alternative but to grant England's Motion to Remand.

B.    England and Ace's Joint Stipulation of Dismissal.

Although the Court is remanding this cause, some discussion of the Joint Stipulation of Dismissal is warranted because it propounds an alternate theory under which this Court might assume subject matter jurisdiction.

Subsequent to this Court's taking the Motion to Remand under submission, England and Defendant Curry Ace Hardware ("Ace") filed a Joint Stipulation of Dismissal on July 17, 2007 (Doc. 42).  Therein, England and Ace agree to Ace's dismissal from the case.  The Joint Stipulation further states that "based on the dismissal of Curry Ace Hardware . . . this Court now has diversity jurisdiction and the minimum $75,000.00 amount in controversy requirement is met."  (Doc. 42 at 1.)  An accompanying letter

to the Court from England's counsel reiterates that this language is a "consent to the jurisdiction of Your Court over this action now based on complete diversity of the parties and the satisfaction of the jurisdictional threshold limitation." England would thus have this Court find that he has consented to federal jurisdiction via garden variety diversity jurisdiction, 28 U.S.C. § 1332(a), obviating any need for a CAFA analysis.

This cannot be done. As all Defendants, save for Ace, point out in their response to the Joint Stipulation, it is "hornbook law . . . that parties cannot create subject matter jurisdiction by consent." (Doc. 43 ¶ 4.) *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951); *People's Bank v. Calhoun*, 102 U.S. 256, 260-61 (1880). It is equally well-settled that "[t]he question of diversity subject matter jurisdiction is determined on the plaintiff's pleadings *at the time of removal*." *Holmes v. Progressive Haycon Ins. Co., et al.*, 2007 WL 1880045 at *1 (S.D. Ala. June 27, 2007) (slip copy) (Granade, C.J.) (citing *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1306 (11th Cir. 2001) (emphasis in original)). *See also Poore v. American-Amicable Life Ins. Co., Inc.*, 218 F.3d 1287, 1289 (11th Cir. 2000) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)

(characterizing removal as the "critical jurisdictional juncture")).  This traditional rule of removal jurisprudence was not changed by the enactment of CAFA.  *Colomar v. Mercy Hospital, Inc.*, 2007 WL 2083562 at *2 (S.D. Fla. July 20, 2007) (slip copy) ("While CAFA expressly alters some traditional jurisdictional notions — such as the complete diversity requirement — there is nothing in CAFA suggesting that the time for assessing removal jurisdiction has been modified").  *Accord, Miedma,* 450 F.3d at 1329.  *But see In re Merimack Mut. Fire Ins. Co.*, 587 F.2d 642, 646 (5th Cir. 1978)[19] (holding that a district court must remand if indispensable parties have not been joined).

This cause was removed under the auspices of CAFA at a time in the process of the case when complete diversity did not exist; traditional diversity jurisdiction is not in play here.[20]  The Court, having determined that it lacks jurisdiction under CAFA, has no alternative but to remand.  Any action on, and the final disposition of, the parties' Joint Stipulation of

---

[19] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the Former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[20] All Defendants, save for Ace, agree in their Response to the Joint Stipulation that "the Stipulation does nothing to affect the jurisdictional issue before the Court; there is no diversity jurisdiction over this action under 28 U.S.C. § 1332(a)."  (Doc. 43 ¶ 5.)

Dismissal remains to be decided by the Circuit Court of Walker County.  It lies with that court to decide whether Ace is properly dismissed.  The parties will then need to determine whether the cause can and should be removed under traditional diversity jurisdiction, 28 U.S.C. § 1332(a).

IV.    Conclusion.

Jurisdiction is determined at the time of removal, and subject matter jurisdiction cannot be conferred upon the Court by consent of the parties, leaving CAFA as the only means by which this Court might assume jurisdiction over this cause.  To do so, the removing defendant must show minimal diversity, which is not contested here, and a $5,000,000 amount in controversy.  In light of Defendants' failure to offer any evidence of the amount in controversy, other than spurious multiplication and disingenuous interpretation of the vague words of England's Complaint, and of the fact that Defendants carry the burden of establishing jurisdiction, England's Motion to Remand is due to be granted.  This case will be remanded to the

Circuit Court of Walker County, Alabama, with all other pending motions to be decided by that court.[21]

A corresponding Order is filed contemporaneously herewith.

Done this <u>16th</u> day of <u>August 2007</u>.

_____

L. SCOTT COOGLER

UNITED STATES DISTRICT JUDGE

124153

_____

[21] Because the Court concludes that this cause is due to be remanded based on Defendants' failure to meet the amount in controversy requirement of CAFA, it does not reach England's argument that remand is compelled by the Tax Injunction Act, 28 U.S.C. § 1341.